UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-319-MEO

| | |
|---|---|
| AUSTIN AMOS BYRNSIDE, ) ) Plaintiff, ) ) vs. ) ) LOWELL GRIFFIN, et al., ) ) Defendants. ) ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 30].

I.  **BACKGROUND**

The incarcerated *pro se* Plaintiff filed this action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred while he was a pretrial detainee at the Henderson County Detention Center ("HCDC"). [Doc. 1: Complaint]. The unverified Complaint passed initial review against Defendants Dylan Rollins, Brandon Hemphill, and Cameron Burrell (the "deputy Defendants") for the use of excessive force and deliberate indifference to a serious medical need, and against Henderson County Sheriff Lowell Griffin and the deputy Defendants for authorizing an unreasonable use of force policy. [Doc. 8: Order on Initial Review]. The deputy Defendants asserted Counterclaims for assault and battery, and a Default was entered. [Doc. 13: Answer and Counterclaim; *see* Doc. 20: Default].

The Defendants have filed a Motion for Summary Judgment and supporting materials. [Doc. 30: MSJ; Doc. 31: MSJ Memo., Exh.]. The deputy Defendants stipulate to the dismissal of their Counterclaims should the Motion for Summary Judgment be granted. [*See* Doc. 31: MSJ

Memo. at 1-2]. The Court entered an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 32: *Roseboro* Order]. The Plaintiff has not responded, and the time to do so has expired. This matter is ripe for disposition.

II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. *See id.*; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must

2

present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. *Kennedy v. Joy Technologies, Inc.*, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott*, 550 U.S. at 380.

### III. FACTUAL BACKGROUND

The relevant forecast of evidence viewed in the light most favorable to the Plaintiff shows the following.[1]

---

[1] The Plaintiff's unverified Complaint cannot be considered on summary judgment as a forecast of evidence. *See generally Goodman v. Diggs*, 986 F.3d 493 (4th Cir. 2021) (a verified complaint

The deputy Defendants were members of the HCDC Special Response Team ("SRT"), a team of detention officers trained to perform cell extractions of combative inmates. [Doc. 31-2: Burrell Decl. at ¶¶ 2-3; Doc. 31-3: Hemphill Decl. at ¶¶ 2-3; Doc. 31-4: Rollins Decl. at ¶¶ 2-3].

During the days leading up to August 27, 2023, the Plaintiff and other inmates became frustrated with a detention officer's racist remarks. [Doc. 31-6: Depo. at 5]. The Plaintiff and six others "felt like [they] had to do something," so they decided to give the detention officers a "rough time."[2] [*Id.* at 6-7]. Plaintiff's goal was to force officers to come into his cell so he could fight them. [*Id.* at 12]. The Plaintiff flooded his toilet, other inmates popped their sprinkler heads, and the Plaintiff and others kicked their doors. [*Id.* at 10]. The Plaintiff wrapped a towel around his face to block officers' anticipated use of a chemical agent, he barricaded his cell door with a mattress, and he readied a cup of liquid to throw at officers to provoke them. [*Id.* at 9-12, 15].

SRT leader Kiel Boyette, who is not a defendant in this case, gathered a team including the deputy Defendants, to extract inmates who were refusing to leave their cells. [Doc. 31-2: Burrell Decl. at ¶ 4; Doc. 31-3: Hemphill Decl. at ¶ 4; Doc. 31-4: Rollins Decl. at ¶ 4]. The Plaintiff was believed to have weapons in his cell including a jail-made knife and a broken sprinkler head, and he had previously bitten officers. [Doc. 31-4: Rollins Decl. at ¶ 6; Doc. 31-2: Burrell Decl. at ¶ 12; Doc. 31-6: Depo. at 3-4]. Burrell was assigned to handle handcuffs and shackles, Hemphill was assigned to grab Plaintiff's left side, and Rollins was assigned the taser shield – a device that emits a nonlethal electrical current so that an inmate can be secured. [*Id.* at ¶ 5; *id.* at ¶ 5; *id.* at ¶ 5].

When the SRT approached Plaintiff's cell, Boyette ordered Plaintiff to submit to handcuffs.

---

is the equivalent of an opposing affidavit for summary judgment purposes).

[2] The Court need not accept the Plaintiff's contradictory statement that the incident "wasn't planned…." [Doc. 31-6: Depo. at 5]; *see Scott*, 550 U.S. at 380.

[Doc. 31-6: Depo. at 7; Doc. 31-2: Burrell Decl. at ¶ 7]. The Plaintiff refused. [Doc. 31-6: Depo. at 13-14]. Boyette then ordered pepper balls to be fired; they struck the back of Plaintiff's cell. [*Id.* at 14, 25; Doc. 31-2: Burrell Decl. at ¶ 9]. Plaintiff was not affected by the pepper balls. [Doc. 31-6: Depo. at 9]. The cell door was opened and the SRT entered. [Id.]. Plaintiff threw liquid that struck Hemphill and Rollins. [Doc. 31-6: Depo. at 11-12; Doc. 31-3: Hemphill Decl. at ¶ 8; Doc. 31-4: Rollins Decl. at ¶ 11]. The Plaintiff pushed the taser shield with his mattress and tried to "sidesweep" an officer; he also tried to punch Hemphill's face but he missed and struck Hemphill's shoulder. [Doc. 31-6: Depo. at 11, 15-16]. The Plaintiff was pushed onto the bunk and fell to the floor. [*Id.* at 15-16]. Officers held the Plaintiff face-down on the floor. [*Id.* at 17]. Had they not done so, the Plaintiff would have continued swinging at officers. [*Id.*].

The Plaintiff continued to struggle as much as possible and was "going all the way out" because he knew he would be sanctioned for his conduct. [*Id.* at 21]. Officer Edwards, who is not a defendant in this case, administered "pain compliance" via taser gloves, Rollins used the taser shield, Burrell and Hemphill punched the Plaintiff's back, and Burrell struck Plaintiff's thigh twice in an effort to get Plaintiff to comply with officers' commands. [*Id.* at 14; Doc. 31-3: Hemphill Decl. at ¶ 9; Doc. 31-2: Burrell Decl. at ¶ 13]. The Plaintiff continued resisting officers' attempts to apply restraints.[3] [*See, e.g.,* Doc. 31-6: Depo. at 19 ("I was … trying to refuse my hands…"); *id.* at 20 ("Q. So you were still resisting? A. Yes.")]. When the Plaintiff had finally "had enough" of the taser gloves, he gave up his hands for cuffing. [*Id.* at 22, 26]. He was handcuffed and escorted out of the housing pod without further issues. [Doc. 31-6: Depo. at 26; Doc. 31-2: Burrell Decl. at ¶ 14].

---

[3] The Court need not accept the Plaintiff's contradictory contention that he was fully restrained at this juncture. [*See* Doc. 31-6: Depo. at 19 ("…I was on the ground in full restraints, laying in water, getting beat, getting punched in the head and in the back and sides")]; *see Scott*, 550 U.S. at 380.

5

The Plaintiff was placed on a bench under the central control window. [Doc. 31-2: Burrell Decl. at ¶ 15]. He was allowed to shower approximately seven hours later. [Doc. 31-6: Depo. at 23-24]. He was not taken to medical. [*Id.*]. The Plaintiff had a headache, blurred vision, his chest was hurting, he was sore, and he suspects that he had a "mild concussion" because he had severe headaches for a couple of weeks. [*Id.* at 24].

IV. **DISCUSSION**

1. **Excessive Force**

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). To succeed on an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. Considerations that may bear on the reasonableness or unreasonableness of the force used include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Graham*, 490 U.S. at 396). In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 394 (citing *Graham*, 490 U.S. at 396).

The forecast of evidence demonstrates that: the Plaintiff and other inmates created a coordinated disturbance so that officers would be forced to respond; the Plaintiff prepared himself defensively (towel and mattress) and offensively (cup of liquid) to fight officers in his cell; Plaintiff

6

refused an order to cuff up; pepper balls were deployed but had no effect; officers knew that the Plaintiff may be armed and that he had a history of biting; upon officers' entry into the cell, Plaintiff attacked by throwing liquid and punching; the Plaintiff continued resisting to the maximum possible extent; when the Plaintiff finally decided to submit to handcuffs, he was secured and escorted away without further incident; and Plaintiff sustained headache, blurred vision, soreness, and a suspected concussion.

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact that any deputy Defendant used excessive force. The deputy Defendants used physical force only after verbal commands and pepper balls failed. They use limited hands-on force and a taser shield to prevent the assaultive and potentially armed Plaintiff from further harming them, to gain control over him, and to restore order. *See, e.g., Gardner v. Momon*, 2025 WL 2206325 (4th Cir. Aug. 4, 2025) (police officers used objectively reasonable force against a disorderly-conduct arrestee by bringing him to the ground and using hand strikes to the arrestee's head where the arrestee had punched an officer, continued to actively resist on the ground, had an arm free, and possessed a knife);[4] *Fuller v. Clark*, 3:21-cv-254, 2022 WL 3723105 (W.D.N.C. Aug. 29, 2022) (it was objectively reasonable for police officer to repeatedly headbutt a homicide suspect who refused to stop reaching, resisted handcuffing, and was likely armed); *Bulluck v. Martin*, 1:20-cv-292, 2022 WL 179142 (W.D.N.C. Jan. 19, 2022) (granting summary judgment to officers who brought a pretrial detainee to the ground to regain control after the detainee was aggressive, combative, and attempted to assault an officer). The Plaintiff continued physically resisting officers until he grew tired of the taser gloves and decided to submit to handcuffs, at which point he was secured without

---

[4] *Somers v. Devine*, 132 F.4th 689, 698 (4th Cir. 2025) (the excessive force claims of arrestees under the Fourth Amendment, and of pretrial detainees under the Fourteenth Amendment, are "functionally identical").

further incident. The Plaintiff has forecast vague evidence suggesting that he sustained, at most, *de minimis* injuries. The Plaintiff has not forecast any evidence that the deputy Defendants used objectively unreasonable force in response to his planned, disruptive and assaultive conduct that necessitated officers' entry into his cell.

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the deputy Defendants' use of excessive force, accordingly, they will be granted summary judgment on this claim.

2. **Deliberate Indifference to a Serious Medical Need**

A pretrial detainee's claim based on deliberate indifference to a serious medical need is properly brought pursuant to the Fourteenth Amendment. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). A plaintiff asserting such a claim must prove that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836). It remains, however, insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611-12.

The forecast of evidence demonstrates that: pepper balls struck the back of Plaintiff's cell while he shielded himself with a towel; officers used physical force as described *supra* to cease

8

his assaultive behavior and to restrain him; the Plaintiff showered approximately seven hours after the incident; the Plaintiff never received medical care; and the Plaintiff had a headache, blurred vision, soreness, and a suspected concussion.

As to the pepper balls, there is no forecast of evidence that the Defendants were deliberately indifferent by failing to provide the Plaintiff with a shower sooner. The lack of prompt decontamination after the use of a chemical agent can rise to the level of a constitutional violation. *See, e.g., Sullivan v. Branch*, 2025 WL 2663667 (E.D. Va. Sept. 17, 2025) (denying jail officers' motion for summary judgment on excessive force and deliberate indifference claims where a reasonable factfinder could conclude that the defendants sprayed a chemical agent in a pretrial detainee's face, then placed him in a restraint chair without first allowing him to rinse his eyes and body). Here, however, it is undisputed that the Plaintiff anticipated officers' use of pepper balls and shielded himself from the same by wrapping his face with a towel. It is unclear whether the Plaintiff experienced any ill effects from the pepper balls whatsoever. The only complaints that are conceivably attributable to the pepper balls are a headache and blurred vision. Assuming *arguendo* that those conditions are attributable to the pepper balls, there is no forecast of evidence that these conditions were known, obvious, or sufficiently serious such that they required immediate decontamination or other action by the Defendants, or that the Plaintiff was harmed by the Defendants' delay.

Nor has the Plaintiff forecast evidence that he sustained any other injury in the incident that warranted medical attention. His references to a headache, blurred vision, soreness, and a suspected concussion are vague and conclusory. He has failed to forecast evidence that these conditions were known, obvious, or that they were sufficiently serious such that the deputy Defendants' inaction posed an unjustifiably high risk of harm, and that he was harmed as a result.

Any suggestion that the Defendants underestimated his injuries is insufficient. *See Short*, 87 F.4th at 611-12.

There is no genuine dispute of material fact regarding the deputy Defendants' deliberate indifference to a serious medical need and, accordingly, summary judgment will be granted on this ground.

### 3. Official Capacity Claims

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n. 55 (1978)). Local governing bodies such as a sheriff's department "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690; *see Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (Eleventh Amendment immunity "does not extend to counties or similar municipal corporations."). Municipal liability under § 1983 cannot be predicated upon a respondeat superior theory. *Burgess v. Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021). Liability arises only when the offensive acts are taken in furtherance of municipal policy or custom. *Id.; see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (a municipality can be liable under § 1983 only where its policies are the "moving force" behind the constitutional violation) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

There are three necessary elements for *Monell* liability. First, the plaintiff must prove a constitutional harm that stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir.

1984) (quoting Monell, 436 U.S. at 694); *see also Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). A policy, custom or practice can exist in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Second, the plaintiff must prove that the policy's creation is fairly attributable to the municipality. *Spell*, 824 F.2d at 1389; *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability."). Third, the plaintiff must show an affirmative causal link between the "policy or custom," and the particular injury suffered by the plaintiff. *Spell*, 824 F.2d at 1389.

The Plaintiff asserts claims against the deputy Defendants and against Sheriff Griffin for authorizing an unreasonable use of force policy at the HCDC. The Plaintiff has not forecast any evidence whatsoever regarding a municipal policy or custom. Moreover, and the Plaintiff's underlying excessive force claim has not survived summary judgment as discussed *supra*. The Plaintiff's municipal liability claim based on the use of force likewise fails. *See Young v. City of Mt. Rainier*, 238 F.3d at 579 (4th Cir. 2001) (no *Monell* claim can exist "where there is no underlying constitutional violation by the employee"); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (per curiam) ("[N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when it has been concluded that the officer inflicted no constitutional harm."); *Anderson v. Caldwell Cty.*

*Sherriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee"). Summary judgment will, therefore, be granted for Sheriff Griffin and the deputy Defendants on the Plaintiff's *Monell* claims.

### 4. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

The Plaintiff has not presented a forecast of evidence that any Defendant violated his constitutional rights. As such, summary judgment for the Defendants would also be proper on this ground.

### 5. Counterclaims

Because summary judgment is being granted in favor of the deputy Defendants, their Counterclaims against the Plaintiff for assault and battery will be dismissed pursuant to their stipulation. [*See* Doc. 31 at 1-2].

### V. CONCLUSION

12

Case 1:23-cv-00319-MEO   Document 34   Filed 01/13/26   Page 12 of 13

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted as to Plaintiff's claims, the Counterclaims by Defendants Rollins, Hemphill, and Burrell are dismissed pursuant to their stipulation, and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk is respectfully instructed to mail a copy of this Order to the Plaintiff at his address of record and at the Maury CI, and to terminate this action.[5]

**IT IS SO ORDERED.**

Signed: January 12, 2026

Matthew E. Orso
United States District Judge

---

[5] The Plaintiff's address of record is at the Bertie CI, however, NCDAC's website indicates that the Plaintiff is presently at the Maury CI. See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1520285&searchOffenderId=1520285&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Jan. 5, 2026); see also Fed. R. Ev. 201 (addressing judicial notice).